All rise. This court is now in session. Please be seated. Would the clerk call the next case, please? 3-14-0-5-4-2 In the matter of the Estate of James Hofer, Reynolds Estate Bank, Capital E by W. Manfred Hayes v. Lucinda White, Executor of the Estate, Appellant by Dwight Shoemaker. Thank you. Mr. Shoemaker, good afternoon. Good afternoon. It pleases the court. I'm Dwight Shoemaker, and I represent Lucinda Jane White, daughter of James Hofer, the decedent whose estate out of which this case arises. This is a claim on a promissory note that was filed in the Estate of James E. Hofer. It involved a note, a promissory note, that was signed back on September 2, 2004 for $129,000, and it was due on December 2, 2004, and it was payable lump sum to Reynolds Estate Bank. The note came due, no action was taken, and then on December 30, 2004, apparently the action was taken. We don't know because no evidence was ever introduced by the bank as to when they decided that they would declare that this debt was canceled, but we know that that was the date because when there is a note and there's cancellation of indebtedness, the Internal Revenue Code treats that as income. So the bank was required, because they are a bank, to file a 1099-C. So it was a 2004 1099-C, and it was filed, and it said that they were canceling 129,000 of debt and then like 2,900 of interest, and that form was sent to the IRS, and it was also sent to the debtor, and the only way that we found out about the 1099-C is the daughter found the 1099-C in her father's papers. And so the bank filed its claim on January 1 of 2011, and so there's a period of 77 months here that the evidence in this case involves, from December 30, 2004 to June 1, 2011. And Mr. Hofer died on November 6, 2010. The case then came up for summary judgment, and there was one summary judgment motion I'm not going to go into because it was of no consequence. It was the second summary judgment that was entered against the estate, and the amount was over 200,000. Don't have that right in front of me here. Our position on this case, that it's not a single 1099-C case. This case involves other evidence, and a lot of the cases that were cited, it's the situation where the 1099-C comes up within one or two years after the issuance of the 1099-C. The debtor then can always file with the IRS an amended return, and then the additional tax from the debt cancellation does not get added. This case, there's a three-year statute of limitations from the time that you filed the income tax return. The income tax return was introduced into evidence 2004, both the federal and the state, and basically the debtor had to pay an extra 31,000 because of the forgiveness of this indebtedness. Then there was no enforcement action taken by the bank. The note, and I omitted this, had a provision for right of set-off. Now, of course, it doesn't say that they have to exercise it, but they had that right. The debt was, if they said it was due an owing, which is what they said on June 1 when they filed the claim, then why didn't they at least set off the balance in Mr. Hofer's checking account? That was never done. They never exercised their right of set-off. To me, that suggests that there was an agreement between Mr. Hofer and Mr. Wade, who was the president of the bank, or if there was no agreement, it suggests at least they had a policy that they just didn't go after a long-term customer. And so I think for 77 months, that clearly shows they had at least the policy. And when you get into the regulations on the Code of Federal Regulations, and I'm not going to cite all of the small letter Bs and little one, but it's laid out in my motion where I asked the court to correct a misstatement of the law that it's not true that the eight identifiable events, which under the Code says you have discharged the debt if there's one of the eight, and there had to be one of the eight on December the 30th. Otherwise, they filed an incorrect 1099-C. And so I wanted to check that and make darn sure, and that's why the motion is in there, the regulations on the eight identifiable events, that became the law in January of 1996. And it's been the law ever since. I think maybe the trial judge was a little bit confused, because I'm told now that the 1099-C that you filed, that a financial institution files, they have to hit one of the eight boxes. If you look at this 1099-C, there's only one box, and that's for bankruptcy, and it was left blank. So we knew it wasn't bankruptcy that they filed the 1099-C. Mr. Shoemaker, I wanted to ask a couple of things. At the time that this transaction took place, the discharge, did the bank also get a benefit tax-wise? Yes, we alleged, and as part of the pleadings, that the bank wanted to write this off on their tax return, and we figured 30% rate, that that would save the bank about $42,000. And that's never been stripped, and that's part of the record. So they did get a tax benefit. And did they ever file an amended form to say, you know, we changed our minds, this isn't discharged? No, no. They have never filed a termination, and the form has at the top, termination, and they have never filed termination of the 1099-C. And the trial judge was concerned about that because she said in her decision that if there is eventually correction, she would suggest, although she would not order the bank to file an amended 1099-C. And, of course, my point on that is that that's okay if, within the three-year period, there's a window there that you can go back and file an amended return, and then, you know, you get the $31,000 back, which is what Mr. Hofer paid. But it's way past that. And just as a point of curiosity, does the same three-year statute of limitations apply to the benefit that the bank got as applied to the tax that Mr. Hofer paid? My understanding is that it doesn't make any difference whether the return is right or wrong. I think after the three-year period runs, that's it. And the bank cannot go back and amend it. The other thing on that, though, is that there are cases, you know, of flagrant fraud. Then I don't know that it's a three-year statute of limitations. I think they can go back six years if the amount of money is over a certain amount. And then just outright fraud, I'm not sure there's any limit. So, okay. Thank you. The unidentifiable events, they're listed, and, you know, I'm just going to paraphrase them. Basically, when you do the form, when the bank does the form, there's one of these eight that have got to be true. And it's basically, you know, has the debt been discharged by foreclosure, that sort of thing? Has it been discharged by bankruptcy? Has it been discharged by a proceeding in Prop 8? Has it been discharged by statute of limitations? You know, and we're not – one of the things that – it's not that because the statute of limitations, which was ten years here, had not run, that somehow they've complied with the eight identifiable events. No. It's just that that one doesn't apply. And so you get down to – there's one, you know, if you go for a period of 36 months with no pay plan, that after 36 months, that's it. It's discharged. There's also, you know, if you have an agreement. We don't know that there was an agreement, but we know from the 77 months, there's at least some evidence showing that there must have been an agreement or a policy. And policy can be implied by conduct, not necessarily expressly spelled out. The other couple of things that I also would like to enforce is that – or to emphasize is that federal tax law still prevails over state law. And I think sometimes there's an impression when you look at this that, well, you can only discharge a note by cancellation and handling, even though that's the normal way things are done, it's not necessarily the only one. And our position is that it was discharged here because of federal tax law. The other thing is that the – the filing of a 1099-C is not the only evidence in this case. There are cases that that's the only thing that was before the appellate court, just 1099-C and that's it. And my research showed that there's five states that say, if you issue the 1099-C, that's it. We don't care what happened after that. But that's not the majority. I found five states, Pennsylvania, Arizona, Connecticut, Tennessee, and Kansas, that they just say 1099-C, that's it. You said it was a cancellation of the business and that's exactly what it is. And then there's seven cases that I found of other states, Ohio was one of them, that says, you know, the 1099-C is not enough by itself. And I think our case comes clearly in here. I don't – I didn't find any case where you had 77 months rolled by and no action. It was usually within one to three years, the period where you could amend. So, in summary, I could not find any Illinois law, and I was amazed at this, on cancellation of indebtedness under the federal tax law. But that's – I couldn't find any. And so I would submit that there is little reason to remand this case to the trail court to determine a rule of law with respect to cancellation of debt under the Section 26 Code of Federal Regulations, since the facts are not in dispute. I mean, all of the facts that the appellate set out, there is no differing set of facts from the amply. But you asked for discovery. I did ask for discovery, that's right. Of what? What's that? Of what? Taking the deposition of the President and the records of the voted rectors, surely there was discussion of this before they did their cancellation of indebtedness. You know, I would think just for auditing requirements, surely the auditors would like to see, you know, some evidence of why they decided to write it off. One of the other puzzling things about the 1099 is that the amount of debt canceled is also shown down in value of property. I don't understand that. And it's not in the record. You can't explain it. Is it possible they delivered some collateral to the bank? Is it possible they delivered collateral to the bank? I don't think so. But I don't know. Do you know anything about this borrower's previous history? Had he ever defaulted before? No, no. It was relatively short term. Yes, the records, the bank records on the ledger, clearly show that Mr. Hofer was making his payments. One of the things that I also raised at the trail level was that he made a payment of like $17,000 on December the 30th on another note that paid it off in full. Well, if you know how farm debt goes, they don't pay it off all in one year. They string it out usually. But that's all I can say. What was the purpose of this note? It was a farm loan. For seed, for equipment, for any idea? All I know is the documents say on it farm loan. It says on the 1099-C that it's a farm loan. And I think maybe on the ledger it says farm loan. Can you draw anything circumstantially from the fact that it was borrowed in June during the planting season and repaid in December after the harvest or discharged in December? Well, I think you do have, I think the bank has a duty of good faith. And since he had some money, I questioned his right or the bank's right to put it all on one note and leave him in default on the other. I think that probably that shows the bank, hey, if they're in business, they probably want to write it off. Because we figure that tax write-off was worth about $42,000 for the bank. That's at a 30% rate. Is that speculation on your part, that $42,000? Or a calculation you don't know? I don't think so, because we said this is the savings and no one moved to strike it. So I think the bank had conceded that they took a tax advantage, a tax benefit from this. Because that's in the record and no one moved to strike it. So it's part of the record. During discovery, the bank did not produce the 1099. Is that correct? I'm sorry, what? During discovery, the bank did not produce the 1099. That's right. The 1099 came from evidence that my client had in her possession, that she got in her possession. That her father kept. Yes, father's records, right. So what do you make of that, that the bank didn't have record of this 1099? I don't understand why they didn't plead. To me, if there was no 1099-C, then I agree with the way the bank approached it. But because there was a 1099-C, it seems to me as part of your pleading, you've got to say, hey, this happened and we don't think it's of consequence. Something to that effect. But there's nothing that the bank ever said. And I don't know, maybe they thought, if we plead, if we don't throw out the 1099-C, then it's a lot cleaner. We have a simpler case to prove. Was the note ever discovered? What's that? Early on, there was some question about where the note was. I saw that Judge Thompson continued it. They found the note. They had the note. They had the note. That's of no consequence, that first motion for summary judgment. Other than, I think they incorporated the counter-affidavit of Lucinda Jane White. That was part of that, and I incorporated that. Okay. Okay. Counselor Wertheim. That's it? Uh-huh. Okay, thank you. Thank you. Mr. Hayes, good afternoon. Good afternoon. May it please the Court, my name is W. Matthew Hayes, and I'm here on behalf of Reynolds State Bank. The reason I'm here today is because of this original note right here, showing evidence of signatures by Mr. Hofer, as well as the bank president, with no additional notations, cancellations, or any other markings on the note. I'm here because this is an unsatisfied note, and it has not been paid to date. This note was entered into right around September 2nd of 2004 by Mr. Hofer, and at that point in time he took out $129,000. I should mention it's a refinance of an existing outstanding principal and interest. This note bore interest at a 7% interest rate, and it did have a maturity date of December 2nd, 2004. Mr. Hofer did not pay this amount. He did not pay it at all. It is true that there was a 1099-C executed by the bank and submitted to the IRS, and this was done to comply with reporting requirements that the IRS has. It was not a discharge of the note. It was a reporting... The reporting requirement is only triggered by one of those eight events, which would be a discharge of one kind or another. That is in the statute, but under the IRS interpretation, they have determined that it is a reporting element only for moving money from one end to the other, in this case moving money from an outstanding obligation that is good to an outstanding obligation that is bad. They in turn did take a tax benefit, which was mentioned briefly, for a reduction of income. And they also entered on their ledgers, handwritten and electronic, that the debt was discharged. They noted that it was, I believe, canceled. It was not discharged. Or charged off, I believe, charged off. And that's an important notation because under Illinois 810 ILCS 5-3-604, it specifically identifies when a negotiable instrument like this can be discharged. And it specifically identifies, and I'll cite to that section and read it, that a person entitled to enforce an instrument like this note, with or without consideration, may discharge the obligation of a party to pay the instrument by an intentional voluntary act such as the surrender of this instrument to the party, destruction of the instrument, mutilation or cancellation of the instrument, canceling or striking out a party's signature, or the addition of words to the instrument indicating a discharge. Or by agreeing not to sue or otherwise renouncing rights against the party by signed writing. Those are the ways that a note like this can be discharged under Illinois law. None of those occurred. One of the things that the appellant is asking for is for more discovery to find out exactly what did happen. There's nothing on the note to indicate that there was any discharge, but the act contemplates other writings, an outside agreement of some kind, that is signed. Would there be a problem? You seem very confident that it didn't occur. What would be the problem? My response to that would be how long does the bank have to wait? We filed our claim in 2011. No discovery occurred. I should mention no discovery whatsoever on behalf of the estate. They sent no requests for written documents. No requests for interrogatories. None. Sounds a little like the argument they're making, maybe 77 months would be the appropriate time. I think that's one of the arguments. And that is an argument that I have heard. However, in this situation we have 10 years under the statute of limitations to collect on this note. We have 10 years, 120 months. At 77, 120 to collect. And I think when we start throwing large numbers around, yeah, that starts to skew things, but our large number is 120. We also have the ability to collect in any method that we deem appropriate under the note and under the statute. In this situation, we didn't collect against his accounts, mainly because we can probably review his account ledger, but maybe he only had $4,000 or less, below the wild card minimum for a bankruptcy issue. There are other reasons and obligations here that we had. So to say that we didn't offset against an account that he had existing is a little bit disingenuous. We have the ability to collect, and in this situation we filed a claim, which is appropriate. I have a question regarding, I understand that you have the obligation to file a 1099-C. Do you have an obligation then to take the reduction in income that would be allowed as a result of filing that 1099-C? But I'm asking, are you obligated to take that? Reduction to whose income? The bank's or to? Right, on your ledger where you were. With regard to the bank, any income benefit that we had at the time will be offset because that now becomes income to us. That has to be reported. So if we are able to collect the $129,000 plus interest, that's something we now have to report. So even though it may have been a benefit at one point on a tax issue, it now becomes also a negative on this tax cycle because now we have to pay based off of income that we've received. That is something that we have to now report. As to the cancellation issue, a cancellation of the 1099-C is probably appropriate as the trial court identified in that situation, and she suggested doing so. But I asked, do you have the obligation to take, if the bank is deciding that, yes, I have to file the 1099-C, but we're not done with this debt and we are certainly going to make every attempt that we can that's reasonable to collect it. Are they then obligated to take the reduction in income that they are allowed to take? At the tax time that they're filing the 1099-C? Well, I'm going to kind of put this in personal terms. A week and a half ago, I had property stolen from a house that I own. Okay, and it's a rental home. I had property stolen from mine. I filed my complaint or my form with the police. I'm going to have to take a deduction on that income, on my tax return, because I'm out that money. If it's recovered at some point in time... But you're saying that you have to. I will. Does the law require that? I will because... That they do this. That was the question. Sure. Is it an obligation? I don't think it's an obligation. I think it's a right. I think it's an ability to minimize one's taxes at the time that the event occurred. I'm not making any statement. I was just asking that question for the purpose of, again, going back to the issue of discovery, and I know you said how long do you have to wait. But when there are issues such that maybe this could be resolved when you have all of the information, maybe that is one of the kinds of things that would be reasonable to determine what the intent of the parties were. Sure, the easiest thing for the bank would have been for Mr. Hofer to pay the money that was owed at the time he did, and that didn't occur. So they were entitled to take whatever tax benefit they could at the time they could to offset not receiving their income at that time. I mean, I know when I represented banks, the easiest thing to do is to not let a debt get real old because then you're chasing it. And this is somebody who lived locally. So I guess I'm trying to understand why no action was taken while he is living and would be in a demand letter. All those kind of things that I would think would be reasonable. And I completely understand if we had an expiration date for Mr. Hofer, we probably would have taken action different. But we didn't expect him to die. It is a smaller community. This is not a large area. It's not Chicago we're talking about. This is a small, local, intertwined community. There's a lot of things that went into play on this one. The simple fact is the note is still outstanding. It was never paid. The bank's ability to work with him, even if they had conversations with him whenever he came in to bank with him, saying, hey, by the way, can you pay something toward it? All of that is irrelevant because the note has never been paid in full. It has not been discharged. It has not had any notations on it canceling it in any way under 810 ILCS 5-3-604A. Nothing has occurred to discharge that under that obligation. So is the operative word cancel? I believe that there's several different words, and the trial court did her darndest to explain those in layman's terms for everyone. There's cancellation, there's charge-off, and there's discharge. Discharge is what we're talking about under 810 ILCS 5-3-604A. This has not been discharged. It has been charged off, but it has not been discharged. Has it been canceled? The only word cancellation that has had the bank's authorization on it was the 1099C, and that is a reporting requirement. And under the IRS. The bank prepared that document, and they filled in the date, December 10, 2004, that the debt was canceled. I believe it was December 30th, but as to they filling out the form. I may be, it's hard, the copy's hard to read. It is. It may be December 30th. It is. It says date canceled. They did complete the form, and they did send it in. The IRS has issued two separate publications dealing with this issue. It is not a cancellation with the intention of never being able to collect on that debt. What were the dates of those publications? Were they after or before December 30th or before? I believe one was from 2004, and the other was from 2005. I have cited them in my materials that were sent to you. Okay. I can look into them. And then I'd also bring the court's attention back to the Cation case, which identifies with this and discusses the IRS opinions and publications. The other cases that were cited by the appellant, those court opinions did not deal with the IRS interpretation. They did not deal with giving deference to how the IRS is applying the rules here. Those courts did not deal with that issue. They only looked at the 1099-C and determined that that's a cancellation without looking at the bigger picture here. The IRS has determined that this is not a situation where that debt can no longer be collected upon. There are a majority of cases dealing with that. Can you reap the tax benefits of a debt that is written off on a 1099-C? Can you reap those tax benefits and then still collect the full amount later? Sure, because you're reaping the tax benefits at that time. So you get the tax deduction. But then when you do collect them a year or two years, six years later, whatever it is, at that point in time it's now income that you have to report on that tax year. So even though you took $129,000 off here, you're now reporting $129,000 in income this year, making it a tax liability in this year's collection. So Judge Thompson wrote in her order when she denied the motion to reconsider, she says that the material fact in this case is that the original promissory note was not cancelled. Correct. But the 1099 says it was cancelled. That is the only document that had the word cancellation on it. All of the ledgers say charged off. They do not say cancelled. So if the operative word is cancelled, then her finding of fact here can be disputed. Not if you take into account the IRS determination of what that document means. Which is why the dates of those letters are so important. I would not only suggest that, but also the IRS interpretation application of the rules prior. If you look at the other cases, the ZILTA bankruptcy court, I believe, signed by the appellant, I apologize, that was a later year. The application of the rule in general under the IRS's interpretation of 1099-C and the application of it is important, absolutely. The publications do address how the IRS is interpreting those. But if that statute, if that rule is the same as it was before, as the appellant is stating, it does not matter what date the IRS rendered their publication because they are going to have the same interpretation if that provision has not changed at all. This was the bankruptcy court's interpretation when they filled out this form. From Mike Winamitz. Were you opposed to further discovery? This was decided on a motion for summary judgment. This was decided on a motion for summary judgment. We filed our claim in 2011. And from that moment on, after it was answered, it was never acted upon by the appellant. We sat here for two plus years waiting before we submitted our summary judgment. At some point we have to move things along. The summary judgment, as I understand it, is to put up a shut-up time. He needs to put forward, excuse me, she, the executive needs to put forward whatever information is important and necessary to reach a proper determination here. No written discovery occurred. No depositions occurred. And they had ample opportunity. From what I understand, under Rule 201, discovery can start after the period of time in which someone is supposed to answer or upon their answer. So 28 days after we submitted our claim, they could have immediately started. Why weren't there any CMC conferences setting discovery deadlines? I can't address that. I do not know. That is something that could have occurred and should have occurred. But they did not in this situation. What I do know is that we submitted our summary judgment, a first summary judgment. And at that point in time, the court deemed that it was not right because we did not have the note at that particular hearing. So we submitted a second summary judgment. And the appellant was well aware of what was going on. And still they took no action to do any discovery or take any depositions. So to come in and say that now I want to do depositions now that I've lost, that's a little bit disingenuous as well. Trying to execute on a note after you informed people it was discharged? Well, we informed that it was canceled under the reporting document to the IRS so that we can take the tax benefit. It wasn't discharged. I have the note here. But if the bank was not keeping good track of their records, there's a possibility there's a bookkeeping mistake here. Correct? You didn't even have the note in the beginning. I assume the note wasn't attached. We had copies attached to all of the pleadings of the existing note. The existing note was not in the courtroom at the time. And that is why the first summary judgment was denied with our ability to replead, which we did, and presentation of the note, which we did as well. Copies were attached, all of them showing that there was no marks, no notations, no cancellations or strikings to any portion of this document. You're more than welcome to take a look at it, but there are none. Mr. Hayes, I have a question. The ledgers that have been provided seem very, very active until this last day of 2004, almost quarterly, sometimes weekly payments or extensions of credit. Is there any activity between Mr. Hoffer and the bank following the 30th of December 2004? I know he had a checking account and other things there, but was there any other activity, farm loans, anything after that date? That is a question I can't answer. I do not have the records dealing with other accounts. I do not know if he had other accounts that were maintained and what their balances showed. I don't have that information. Thank you. Thank you, Mr. Hayes. Thank you. Mr. Shoemaker, rebuttal. Yes, sir. The first thing I want to emphasize is that no cancellation on the note is beside the point. We live in a country, you know, that has federal and has state. And the federal regulations control here, and they simply say an indebtedness is discharged. It doesn't have to be written on the note. The regulations of the IRS says it's discharged on the date of the occurrence  of the 26th Code of Federal Regulations, and I won't take you through all of the subs. So clearly, for them to issue a cancellation on December 30th and then somehow say, well, because we didn't cancel the note, it didn't really happen, I frankly don't follow that. So federal law oftentimes takes things away that may be under state law that you have. There's also a case, and I'm sorry I can't find the site. There is at least one case that says an intentional discharge of the note, you know, the state requirement, that the Form 1099-C meets that requirement of a release. Also, counsel pointed out no discovery. We made the response on September 17th, 2013. The record does show that Carl Breadburg was the attorney of record here when he filed the claim, and I can't really say, I think it was at least a year and a half, maybe two years before Mr. Hayes became counsel of record. So there were some things, delays there because different counsel, and I don't know that Mr. Breadburg's, whatever his conduct was, that that should be tacked on and say, well, we're dilatory. And especially, and it's unfortunate, there was no case management order. Case management orders. Whose call was this? What's that? This is a Ruck Island case, right? Whose courtroom was this assigned to? I mean, Judge Thompson is relatively new to the bench. When this was filed in 2011, who was the judge assigned to the case? See, I think the answer to that is that the probate, they do not assign a judge. I don't think that's true anymore. But I remember going sometime to the Ruck Island clerk's office and said, who is going to be hearing this case? And they didn't know. So I think it's a situation that won't happen again, because I think now probate cases are going to be subject to a case management order. The other thing is that, you know, when they filed this cancellation of the debt, you know, a bank is a citizen like anyone else. It's under oath. It's under penalties of perjury if it's wrong. So they had to be honest in filing the 1099-C and that there was one of the eight identifiable events were there. Thank you. Thank you, Mr. Schumacher. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel discussion. All rise.